FILED' 10 NOV 02 16:06 USDC-ORE

LAWRENCE BREWSTER
Regional Solicitor
BRUCE L. BROWN
Associate Regional Solicitor
DANIELLE L. JABERG
Counsel for ERISA
EVAN H. NORDBY, WSBA #35937
Trial Attorney
U.S. Department of Labor
1111 Third Avenue, Suite 945
Seattle, Washington 98101-3212
(206) 553-0940; FAX: (206) 553-2768

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br><br>v.<br><br>C&K MARKET, INC., & the C&K MARKET, INC. 401(k) PLAN,<br><br>Defendants. | CASE NO. 6:10-CV-06360-AA<br><br>CONSENT JUDGMENT AND ORDER |

Plaintiff HILDA L. SOLIS, Secretary of Labor, UNITED STATES DEPARTMENT OF LABOR ("Secretary") pursuant to her authority under §§ 502(a)(2) and (5) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (5), has filed a Complaint against Defendants C&K MARKET, INC., an Oregon corporation ("C&K" or the "Company"), and the C&K MARKET, INC. 401(k) PLAN, an employee benefit plan (the "Plan").[1]

A. The Secretary, C&K, and the Plan (collectively, the "Parties") admit that the Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and that venue lies in the District of Oregon pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

B. The Parties have agreed that this Consent Judgment & Order shall fully settle all claims the Secretary asserted in her Complaint and further agree to the entry of this Consent Judgment & Order.

C. C&K neither admits nor denies the Secretary's allegations in the Complaint.

IT IS HEREBY **ORDERED, ADJUDGED,** and **DECREED** that:

1. The Secretary alleges that Defendant C&K, as set forth in the Secretary's Complaint, has violated ERISA and caused the Plan losses and lost-opportunity costs, for which Defendant C&K is liable. The identified alleged losses shall be restored to the Plan in accordance with the payment schedule set forth in Paragraph 4, *infra*.

2. Defendant C&K is permanently enjoined and restrained from violating the provisions of Title I of ERISA, 29 U.S.C. §§ 1001-1191c.

3. Contemporaneous with the execution of this Consent Judgment and Order, Douglas Nidiffer ("Nidiffer") has resigned as Trustee of the Plan and from the Plan Investment

---

[1] The Plan is named in the Secretary's Complaint solely as a party necessary for complete relief.

Committee. C&K shall appoint a successor Trustee and a successor to the Plan Investment Committee.

4. In resolution of this matter involving alleged losses and lost-opportunity costs to the Plan, and civil penalties pursuant to ERISA § 502(l), 29 U.S.C. § 1132(l), Defendant C&K shall administer funds totaling Three Million Dollars ($3,000,000) in principal, plus simple interest at eight percent per annum on the declining balance until the principal is paid in full, as follows:

    a. Defendant C&K shall remit $500,000 to the Plan within thirty days of the date of entry of this Consent Judgment and Order.

    b. Thereafter, Defendant C&K shall remit payments on or before July 1 of each Plan year in the amount of $500,000. The first of these installments is due and payable on or before July 1, 2011, and the remaining installments shall be due and payable on or before July 1 of each succeeding year thereafter until all installments have been paid. The schedule of payments and amortization is attached as Exhibit A, and assumes that payments will be made on the specified date in the specified amounts. Any deviation in the payment schedule shall require that the schedule of payments and amortization be revised.

    c. C&K shall make a final annual payment of any and all remaining principal and interest under this paragraph, on the schedule set forth in subparagraph b and Exhibit A. The final annual payment shall be divided between the Plan, and, the Secretary, in payment of a civil penalty pursuant to ERISA § 502(l), 29 U.S.C. § 1132(l), unless said

---

pursuant to Fed. R. Civ. P. 19(a).

civil penalty is waived pursuant to Paragraph 17. Any civil penalty payment shall be calculated as described in Paragraph 17.

  d.  In the event of default by C&K in the payment of any of the annual installments identified in this paragraph, the total balance remaining unpaid plus interest accruing shall then become immediately due and payable, and interest shall continue to accrue until the total balance remaining unpaid plus interest accruing is paid in full.

  e.  C&K shall retain the right to prepay all amounts due under this paragraph.

5.  The C&K Investment Committee shall actively market Rogue Landing and the Lakeside Property, properties owned by the Plan, for sale.

6.  C&K will continue to provide and/or pay for property management services for Rogue Landing, the Lakeside Property, and the John Day Market.

7.  Rogue Landing shall only be sold by the Plan to a third party who is not a party-in-interest to the Plan as defined at ERISA § 3(14), 29 U.S.C. § 1002(14) (hereinafter "Third Party Buyer"), prior to the auction described in Paragraph 8 if the Parties agree on the purchase price and the terms of sale.

  a.  If the Parties disagree on the purchase price or the terms of sale, the Parties shall submit the matter to Judge Michael Hogan, United States District Court Judge for the District of Oregon, who shall make such decision and such decision shall be binding on the Parties.

  b.  Notwithstanding the prior provisions of this Paragraph 7, and only after the purchase price and the terms of sale to a Third Party Buyer have been agreed upon by the Parties or the purchase price and the terms of sale to a Third Party Buyer have been decided upon by Judge Hogan under the previous sentence, C&K may offer to purchase

the property instead of a Third Party Buyer, if the sale price to a Third Party Buyer would otherwise be less than Five Million Dollars ($5,000,000). Any C&K purchase offer under the previous sentence must offer no less favorable terms of sale as the offer of the Third Party Buyer; must offer a sale price that would result in an equal or greater net payment to the Plan as the offer of the Third Party Buyer, once an ERISA § 502(l) civil penalty of ten percent of the total sale price to C&K is paid to the Secretary pursuant to Paragraph 17; and, must be disclosed in full to the Secretary at the time of offer to the Plan. The decision as to which offer to accept under this subparagraph shall be made by the Plan Trustee in accordance with ERISA.

8.    If Rogue Landing has not been sold within six years from the date of entry of this Consent Judgment and Order, the Rogue Landing property shall be put up for auction, with said auction scheduled to conclude within ninety days of the expiration of the six-year period. The Plan Trustee shall have the right to set a minimum bid at such auction, not to exceed Five Million Dollars ($5,000,000). C&K may offer to purchase the Rogue Landing property at the auction, instead of any other Third Party Buyer bidding at the auction, if the sale price to a Third Party Buyer would otherwise be less than Five Million Dollars ($5,000,000). Any C&K purchase offer under the previous sentence must offer no less favorable terms of sale as the offer of the Third Party Buyer; must offer a sale price that would result in an equal or greater net payment to the Plan as the offer of the Third Party Buyer, once an ERISA § 502(l) civil penalty of ten percent of the total sale price to C&K is paid to the Secretary pursuant to Paragraph 17; and, must be disclosed in full to the Secretary at the time of offer to the Plan. The decision as to which offer to accept under this paragraph shall be made by the Plan Trustee in accordance with ERISA.

9. If, prior to or at said auction, Rogue Landing is purchased by a Third Party Buyer for less than Five Million Dollars ($5,000,000), C&K shall pay to the Plan the difference between the purchase price and Five Million Dollars ($5,000,000) (the "Shortfall Amount") minus the amount of any ERISA § 502(l) civil penalty as set forth in Paragraph 16 and 17 unless waived, within thirty (30) days after the close of sale of Rogue Landing.

10. If, prior to or at said auction, Rogue Landing is purchased by C&K, and the net payment to the Plan is less than Five Million Dollars ($5,000,000), C&K shall pay to the Plan the Shortfall Amount; the Shortfall Amount under this paragraph shall be the difference between the net payment to the Plan under Paragraphs 7 or 8 and Five Million Dollars ($5,000,000) minus the amount of any ERISA § 502(l) civil penalty as set forth in Paragraph 16 and 17 unless waived, within thirty (30) days after the close of sale of Rogue Landing.

11. If Rogue Landing is not purchased prior to or at auction by a Third Party Buyer, C&K shall purchase Rogue Landing by payment of Five Million Dollars ($5,000,000) less any amount of ERISA § 502(l) civil penalty not waived pursuant to Paragraph 16 and 17, by tendering payment to the Plan within thirty (30) days following the close of the auction.

12. In the event Rogue Landing is sold for Five Million Dollars ($5,000,000) or less, the proceeds of the sale, net after costs of sale, plus the Shortfall Amount, shall be allocated on a pro rata basis to all participants in Plan A as of the date of sale and transferred into the Plan B accounts of all such participants no later than thirty days of the close of sale. In the event Rogue Landing is sold for more than Five Million Dollars ($5,000,000), the proceeds of the sale, net after costs of sale, shall be allocated on a pro rata basis to all participants in Plan A as of the date of entry of this Consent Judgment and Order and transferred into the Plan B accounts of all current Plan participants no later than thirty days of the close of sale. For those Plan participants

who have taken distributions from Plan A, in whole or in part, between the date of entry of this Consent Judgment and Order and the date of sale of Rogue Landing, any amounts payable to such participants under this paragraph shall be distributed or transferred as elected by the participant and as permitted by applicable law as soon as practicable but no later than ninety days following the date of sale of Rogue Landing.

13. If C&K purchases Rogue Landing, C&K shall pay all closing costs, including those closing costs that would otherwise customarily be borne by the seller, the Plan.

14. If the Lakeside property is not sold within six years from the date of entry of this Consent Judgment and Order, the property shall be put up for auction scheduled to conclude within ninety days of the expiration of the six-year period. The Plan Trustee shall have the right to set a minimum bid or other terms of sale at such auction. C&K shall have the right to bid for, and purchase, the Lakeside property at the auction or following an unsuccessful auction by the end of the Plan year within which the auction concludes, by following the terms set forth in the Voluntary Fiduciary Correction Program ("VFCP"), 71 Fed. Reg. 20262-20285 (Apr. 19, 2006), with the exception of the requirement to file an application to do so. For purposes of Sec. 7.4(f)(2) of the VFCP, the Fair Market Value of the Lakeside property under this paragraph shall be the Curry County, Oregon, tax assessment value of the Lakeside property or the Plan's cost basis in the Lakeside property, as of the date of sale to C&K, whichever is greater. The proceeds of any sale of the Lakeside property, net after costs of sale, shall be allocated on a pro rata basis to all participants in Plan A as of the date of sale and transferred into the Plan B accounts of all such participants no later than thirty days of the close of sale.

15. If a Third Party Buyer purchases Rogue Landing and/or the Lakeside property, a civil penalty pursuant to ERISA § 502(l), 29 U.S.C. § 1132(l), shall not be assessed upon the amounts paid to the Plan by the purchasing party.

16. If C&K purchases Rogue Landing, and/or is required to pay the Shortfall Amount pursuant to Paragraphs 9 or 10 above, C&K shall pay a civil penalty pursuant to ERISA § 502(l), 29 U.S.C. § 1132(l), unless waived, as described in paragraph 17.

17. The Secretary agrees to compromise the amount of all of the civil penalties under ERISA § 502(l), 29 U.S.C. § 1132(l), to ten percent of the Applicable Recovery Amounts under Paragraphs 4, 7, 9, 10 and 11.

    a. The Applicable Recovery Amount under Paragraph 4 shall equal the sum of all payments made by or on behalf of C&K under that paragraph.

    b. The Applicable Recovery Amount under Paragraph 7 shall equal the net payment to the Plan under Paragraph 7.

    c. The Applicable Recovery Amount under Paragraph 8 shall equal the net payment to the Plan under Paragraph 8.

    d. The Applicable Recovery Amount under Paragraph 9 shall equal the Shortfall Amount.

    e. The Applicable Recovery Amount under Paragraph 10 shall equal the sum of all payments made by C&K under that subparagraph.

    f. The Applicable Recovery Amount under Paragraph 11 shall equal Five Million Dollars ($5,000,000).

    g. C&K agrees to waive Notice of Assessment of said civil penalties; payment of the civil penalty of ten percent of the Applicable Recovery Amount shall be

made to the Secretary no later than the final payment of principal and interest under Paragraph 4 of this Consent Judgment and Order, and no later than 60 days after the close of sale of Rogue Landing resulting in a payment or payments to the Plan under Paragraphs 7, 9, or 10 of this Consent Judgment and Order.

   g. No later than fifty days prior to the due date of any civil penalty under this paragraph, C&K shall file a petition for waiver or reduction of said civil penalty as provided for in 29 C.F.R. § 2570.85. The period to pay the civil penalty shall be tolled while the waiver application is pending. C&K may not challenge the Applicable Recovery Amount, the validity of the violations alleged, or its alleged liability for the violations.

   h. If the Secretary waives or reduces the ERISA § 502(l) civil penalty assessed under this paragraph, C&K shall deposit an amount equal to the amount by which the civil penalty is reduced or waived to the Plan, which shall be allocated as specified in Paragraph 12, and no such amounts shall inure to the benefit of C&K. If the Secretary does not waive any or all of the civil penalty assessed under this paragraph, payment shall be made to the Secretary and an equal amount subtracted from the corresponding payment to the Plan under Paragraphs 4, 9, 10 and/or 11 of this Consent Judgment and Order.

   i. Any payment of civil penalties shall be made by sending certified or cashiers checks payable to the United States Department of Labor (with "EBSA Case No. 71-08129(48)" written on the check) to:

    <u>For Regular Mail</u>
    U.S. Department of Labor
    ERISA Civil Penalty

P.O. Box 70942
Charlotte, NC 28272-0942

<u>For Overnight Courier (e.g., FedEx)</u>
U.S. Department of Labor
QLP Wholesale Lockbox NC0810
Lockbox #70942
1525 West WT Harris Blvd.
Charlotte, NC 28262

18.  At its own cost, C&K will retain an environmental lawyer to review the status of the John Day Market property owned by the Plan. C&K agrees to make its best efforts in conjunction with the Plan fiduciaries to structure a resolution which minimizes the Plan's risk and costs in connection with possible remediation of environmental contamination of the John Day Market property.

19.  C&K shall amend the Plan Document to allow for the offset of a participant's Plan benefits against an amount that the participant is required to pay to the Plan pursuant to a settlement agreement between the Secretary and the participant.

20.  The Parties shall each bear their own costs, expenses, and attorneys' fees incurred to date in connection with any stage of this proceeding, including but not limited to attorneys' fees which may be available under the Equal Access to Justice Act, as amended.

21.  C&K shall send confirmation of each corrective action set forth herein to the Secretary. Such confirmations, within 30 days of each such corrective action, and all petitions for ERISA § 502(l) waivers, shall be sent to:

Regional Director
U.S. Dept. of Labor
Employee Benefits Security Administration
90 7th St., Suite 11300
San Francisco, CA 94103

22. The Secretary expressly waives, releases and forever discharges any and all claims which she has or may have against C&K Market, Inc., including its attorneys, employees, representatives or insurers, relating to the transactions, events, acts or omissions alleged in the Complaint against C&K Market, Inc., as well as any and all other claims that she has or may have against C&K Market, Inc., including its agents, attorneys, employees or representatives or insurers, arising out of or in connection with the filing of the Complaint against C&K Market, Inc., or any other proceedings or investigations incident thereto, through the date of execution of this Settlement Agreement.

23. C&K Market, Inc. expressly waives, releases and forever discharges any and all claims which it has or may have against the Secretary, or any of her officers, agents, employees, or representatives, in both their governmental and individual capacities, relating to the transactions, events, acts or omissions alleged in the Complaint against C&K Market, Inc., or arising out of or in connection with the filing of the Complaint against C&K Market, Inc., or any other proceedings and investigations incident thereto, including but not limited to claims under the Equal Access to Justice Act, as amended.

24. The Parties agree that this Consent Judgment and Order shall not create a judgment lien against the real property of C&K or the Plan, or writ of attachment against the personal property of C&K or the Plan, unless filed, registered, and/or recorded pursuant to state law. The Secretary agrees that she will not file, register, and/or record this Consent Judgment and Order in any state court or county lien record, until and unless C&K or the Plan defaults upon any term of this Consent Judgment and Order.

25. Nothing in this Consent Judgment is binding on any governmental agency other than the United States Department of Labor, Employee Benefits Security Administration.

26. This Court retains jurisdiction of this action for purposes of enforcing compliance with the terms of this Consent Judgment and Order.

27. By signing their names to this Consent Judgment and Order, the Parties represent that they are informed and understand the effect and purpose of this Consent Judgment and Order.

28. This Consent Judgment and Order may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

The Court directs the entry of this Consent Judgment & Order as a final Order.

IT IS SO ORDERED.

Dated: 11/9/10

_____
UNITED STATES DISTRICT JUDGE

Entry of this Consent Judgment is hereby consented to:

**FOR THE SECRETARY OF LABOR:**

M. PATRICIA SMITH
Solicitor of Labor

LAWRENCE BREWSTER
Regional Solicitor

BRUCE L. BROWN
Associate Regional Solicitor

DANIELLE L. JABERG
Counsel for ERISA

By: _____        10/29/2010
EVAN H. NORDBY, WSBA #35937                 Date
Trial Attorney

Attorneys for Plaintiff Hilda L. Solis,
Secretary of Labor
United States Department of Labor
Office of the Solicitor
1111 Third Avenue, Suite 945
Seattle, Washington 98101
Phone (206) 553-0940
Fax (206) 553-2768
E-mail: Nordby.evan@dol.gov


**FOR C&K MARKET, INC., an Oregon Corporation**

By: _____        10/28/2010
Print name: Elizabeth W. Bauer              Date

Title: VP, CFO and General Counsel


**FOR C&K MARKET, INC., 401(K) PLAN**

By: _____        10/28/2010
Print name: Elizabeth W. Bauer              Date

Title: Investment Committee Member

## EXHIBIT A

**C&K Note Receivable**
Date: 12/31/2009
Interest %: 8.00%
Principal: 3,000,000.00

| Date | Payment | Days | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 12/31/2009 | 0.00 | 0 | - | - | 3,000,000.00 |
| 10/29/2010 | 500,000.00 | 299 | 196,602.74 | 303,397.26 | 2,696,602.74 |
| 7/1/2011 | 500,000.00 | 242 | 143,030.76 | 356,969.24 | 2,339,633.50 |
| 7/1/2012 | 500,000.00 | 365 | 187,170.68 | 312,829.32 | 2,026,804.18 |
| 7/1/2013 | 500,000.00 | 365 | 162,144.33 | 337,855.67 | 1,688,948.52 |
| 7/1/2014 | 500,000.00 | 365 | 135,115.88 | 364,884.12 | 1,324,064.40 |
| 7/1/2015 | 500,000.00 | 365 | 105,925.15 | 394,074.85 | 929,989.55 |
| 7/1/2016 | 500,000.00 | 365 | 74,399.16 | 425,600.84 | 504,388.72 |
| 7/1/2017 | 544,739.81 | 365 | 40,351.10 | 504,388.72 | - |
|  | $4,044,739.81 |  | ########### | ########### |  |